**Chester S. HAMILTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 4987.**

United States Court of Appeals, Tenth Circuit.

Feb. 4, 1955.

John S. Boyden, Salt Lake City, Utah, for appellant.

A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, for appellee.

Before PHILLIPS, Chief Judge, BRATTON, Circuit Judge, and VAUGHT, District Judge.

VAUGHT, District Judge.

The sole question here is whether or not the trial judge abused his discretion in vacating the probation of appellant.

The appellant, Chester S. Hamilton, owned and operated a drugstore in Brigham City, Utah, and also owned a 51 per cent partnership interest with Glade R. Day in a drugstore known as the Clearfield Pharmacy, located approximately 35 miles from Brigham City. The Clearfield Pharmacy (hereinafter referred to as the Pharmacy), was managed entirely by Day. Hamilton made infrequent visits to the Pharmacy but aside from his ownership, he exercised no control over its management.

In November, 1949, grand jury indictments were returned against Hamilton and Day charging each with evading and attempting to defeat a large part of the income and victory taxes due and owing by them to the United States of America for the calendar year 1943. The indictment against Hamilton contained three counts. On the 29th of November, 1949, Hamilton entered a plea of guilty on counts two and three and a plea of not guilty on count one, and thereafter on December 23, 1949, it was ordered that Hamilton be placed on pro-

bation for a period of five years. On the 27th day of December, count one was dismissed.

Following their indictment, Hamilton and Day procured the services of a competent auditor who took charge of the bookkeeping in the Pharmacy and made monthly reports to Hamilton, and apparently all of the information Hamilton had regarding the financial conduct and management of the Pharmacy was through these reports.

On April 14, 1954, an information, Cr. 51–54, was filed in the United States District Court for the District of Utah, charging the Pharmacy with violation of Sections 331 and 333, U.S.Code, Title 21, in six counts, and charging Glade R. Day with violation of the same sections in five counts. All of said counts were based upon sales of drugs within the purview of said sections without a prescription therefor from a practitioner licensed to administer said drugs, which resulted in said drugs being misbranded while held for sale in violation of said sections. On April 30, 1954, Day entered a plea of guilty on behalf of the Pharmacy to the six counts of the information, and a plea of guilty on behalf of himself on five counts. Thereafter, on June 7, 1954, Day appeared in court with counsel and the Pharmacy was sentenced to pay a fine of $1,000.00 on each of six counts, or a total of $6,000.00, and Day was sentenced to one year on each count to run consecutively. Sentence was suspended and the defendant placed on probation for five years. In the criminal income tax case, No. 15913, Day's probation therein was revoked by reason of his violation of law in criminal case No. 51–54, and he was sentenced to serve two years imprisonment.

On June 24, 1954, the court on its own motion issued an order directed to appellant, requiring him to appear before the court at ten o'clock the next morning to show cause why his probation should not be revoked. Appellant appeared with his attorney who stated to the court that appellant had no knowledge of the violations of the Pharmacy; that the appellant managed another store at Brigham City; that Day managed the Pharmacy; that appellant was present at the Pharmacy very infrequently; that the profits were determined and divided by a certified public accountant and thereafter appellant received a check for his share of the profits.

On the same occasion the attorney for Day stated in open court:

"Mr. Day has indicated to me that he was fully responsible for the sale of the drugs; that Mr. Hamilton did not know of them; that he was the sole manager; that Mr. Hamilton received 51 percent of the profits. That was the practical extent of his activity in the store: He received 51 percent of the profits and he did make contact infrequently in connection with the operation of the store, but he does not feel that Mr. Hamilton had any knowledge or information concerning these matters * * *." (R. 16)

The resident inspector of the Pure Food and Drugs Administration at Salt Lake City, John C. Akers, informed the court that at the time of their investigation of the Pharmacy they also investigated appellant's store at Brigham City; that they were unsuccessful in making any purchases in Brigham City from Mr. Hamilton; and that *they found no reason to charge him with the operation of the Pharmacy.* (R. 17)

At the hearing when appellant was placed on probation, the court stated:

"* * * we will put these men on probation for five years, and if they violate the Federal income tax laws during that five years and are brought before the court again on charges of this nature, I will terminate the probation and commit them to a Federal penitentiary. * * * this probation to be five years unless sooner terminated by the court, as the circumstances may justify. * * * My idea in giving you a long probationary period is to pro-

vide that period of time during which you will have this additional incentive for complying with the provisions of the revenue laws. You understand that, both of you, do you? That is all." (R. 13–14)

Quoting from the hearing on June 25, 1954:

"Mr. Kesler (U. S. Attorney): The next matter on the calendar, your Honor, is that of Chester S. Hamilton. Mr. Hamilton is here with his counsel. It is an order to show cause why his term of probation should not be revoked.

"The Court: This fellow is a part of this Glade R. Day case. Bring Mr. Day forward too. What we have done is call this man in here because during the terms of his probation his drugstore in which he has 51 percent ownership stands convicted upon a plea of guilty of violation of the Drug Act of the United States.

"Mr. Boyden (attorney for Hamilton): Yes, sir. Now, your Honor, with respect to that, let me say that Mr. Hamilton had absolutely no knowledge of any—and couldn't have any knowledge because he was in Brigham City and I don't think that anyone would say that he had any knowledge or could have.

"The Court: *I don't know whether he had any knowledge or not. He was 51 percent owner.*

"Mr. Boyden: That is true. Now as to penalizing him for that because he had a financial investment in the Clearfield Drug, the Court sentenced that drugstore $1000 a count, if I am correctly informed—I haven't seen the file.

"The Court: That is all I could sentence on that.

"Mr. Boyden: A thousand dollars a count, so that the drugstore was sentenced, was it, $6000?

"Mr. Nielsen (Attorney for Day): That is right." (R. 14–15)

It is not only apparent that Hamilton was not charged in the criminal case with Day and the Pharmacy but there was nothing in the record on which the court could even base an opinion that Hamilton had any knowledge of the violations at the Pharmacy. The only basis upon which the court could have concluded that Hamilton's probation should be revoked was the lone fact that he had a 51 percent interest in the Pharmacy. The trial judge's conclusions were stated as follows:

"Now I think a majority owner in a drugstore that has been convicted on six counts of drug violation isn't to be regarded as Simon Pure. Of course, if this were an original charge, original criminal charge, Hamilton couldn't be charged personally with something that Day did, but that isn't the situation. The situation is that Hamilton's drugstore stands convicted of a Drug Act violation. I think that is a violation of his probation." (R. 20)

The court stated at a further hearing that "Hamilton and Day were in a conspiracy upon the income tax violation." (R. 24)

The court orally admonished the appellant at the time he was placed on probation that if he violated "the Federal income tax laws" during the five-year period his probation would be terminated, but the only express condition in the written order of probation was that the appellant "report to the court annually during said period of probation."

There is no contention that there was any actual violation of the order of probation. No act of Hamilton was suggested or alleged connecting him with the Pharmacy transactions. Neither were Hamilton and Day charged nor convicted of a conspiracy.

It is true that a court has the discretion to revoke an order of probation but it has been determined by the courts that discretion must be exercised fairly and must not be abused.

In Burns v. United States, 287 U.S. 216, 218, 53 S.Ct. 154, 156, 77 L.Ed. 266, the court said:

"The question, then, in the case of the revocation of probation, is not one of formal procedure either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action. * * * While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice."

Cited in the Burns case, supra, was the case of Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520, wherein the court held:

"The term 'discretion' denotes the absence of a hard and fast rule. * * * When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."

In Hollandsworth v. United States, 4 Cir., 34 F.2d 423, 427, the court said:

"The third point of the defendant raises an important and interesting question as to the extent of the power which resides in the District Court to cause a defendant, who has been released upon probation, to be brought in and sentenced. We think it is a necessary implication from the terms of the statute that this power may not be exercised arbitrarily and without reference to the behavior of the defendant during the period of probation. * * *

" * * * In view of these several provisions of the act, it seems to be clear that, if the probationer complies with the condition of his probation, he is entitled to remain on probation, subject to the supervision of the court and its officers, until the maximum period of sentence expires, and is then entitled to a final discharge. The power of the court to revoke a probation and sentence the probationer may not be exercised unless it is made to appear that he has failed to comply with the terms and conditions prescribed for him. It is not conceivable that Congress intended to confer upon the court the power to call back the defendant at any time within five years after conviction and imprison him, no matter how blameless his conduct may have been during the interim, or how strictly he may have observed the terms of his probation. * * *"

At the conclusion of the hearing when the court revoked probation and sentenced appellant, the court declined to permit bond but committed the appellant to the custody of the marshal at once, and it was necessary for the appellant to apply to this court for an order permitting the appellant to make bond pending his appeal.

It is apparent that the trial judge exercised considerable feeling in this matter and that he was more inclined to be lenient and considerate of Day than of Hamilton, but his act of revoking the probation of Hamilton cannot be considered by this court in any other light than as arbitrary and an abuse of judicial discretion.

The order of the District Court revoking the probation of appellant and the sentence thereafter imposed are vacated and set aside.